J-S43009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| VERNANDO R. JONES | |
| Appellant | No. 3409 EDA 2012 |

Appeal from the Judgment of Sentence November 8, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005904-2011

BEFORE:  GANTMAN, P.J., ALLEN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED AUGUST 29, 2014**

Appellant, Vernando R. Jones, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions of second degree murder, burglary, aggravated assault, simple assault, recklessly endangering another person, criminal trespass, and possessing an instrument of crime.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to

_____

[1] 18 Pa.C.S.A. §§ 2502(b), 3502(a), 2702(a), 2701(a), 2705, 3503(a)(1)(ii), and 907(a), respectively.

_____

*Former Justice specially assigned to the Superior Court.

restate them in their entirety.[2]

Appellant raises the following issues for our review:

IS [APPELLANT] ENTITLED TO AN ARREST OF JUDGMENT ON THE CHARGE OF MURDER IN THE SECOND DEGREE AND ALL OTHER CHARGES AS THE VERDICT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AS THE COMMONWEALTH DID NOT PROVE THAT [APPELLANT] WAS AN ACTOR, CONSPIRATOR OR ACCOMPLICE WITH REGARD TO THE HOMICIDE, NOR DID THE COMMONWEALTH PROVE THAT [APPELLANT], IF HE ACTED, ACTED WITH THE SPECIFIC INTENT TO KILL OR PREMEDITATION OR WITH MALICE?

IS [APPELLANT] ENTITLED TO A NEW TRIAL AS THE VERDICT IS NOT SUPPORTED BY THE GREATER WEIGHT OF THE EVIDENCE?

(Appellant's Brief at 3).

_____

[2] Appellant and the female victim dated briefly in 2010. Shortly thereafter, female victim severed contact with Appellant when the male victim moved in with female victim. Over the next several months, Appellant sent female victim a large number of text messages to which female victim rarely responded. On February 25, 2011, female victim called Appellant and asked to borrow money. That same day, Appellant spent several hours with female victim in her home, and eventually agreed to lend female victim the money. Appellant sent female victim text and voicemail messages over the next several days which indicated his desire to rekindle their romantic relationship. When female victim ignored Appellant's messages, he sent her threatening and derogatory messages. On February 28, 2011, Appellant called female victim several times in the early morning, and kicked down female victim's door after she ignored his calls. Upon entering female victim's home with a knife, Appellant found female victim hiding in the bathroom, and attacked her with his fists, feet, and knife. When male victim tried to intervene, Appellant fatally stabbed him in the chest and fled the scene. Appellant was subsequently arrested. Female victim identified Appellant as the individual who broke into her home and fatally stabbed male victim.

As a preliminary matter, "a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Commonwealth v. Gillard*, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004) (internal quotation marks omitted). A claim challenging the weight of the evidence generally cannot be raised for the first time in a Rule 1925(b) statement. *Commonwealth v. Burkett*, 830 A.2d 1034 (Pa.Super. 2003). An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a) opinion. *Id.* Instantly, Appellant failed to raise at sentencing or in a post-sentence motion his claim regarding weight of the evidence. Rather, Appellant raised the claim for the first time in his Rule 1925(b) statement. Therefore, Appellant's weight of the evidence claim is waived. *See id.*

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Rose DeFino-Nastasi, we conclude Appellant's sufficiency of the evidence issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed September 16, 2013, at 9) (finding: Appellant forcibly entered female victim's home without license or privilege; front door was splintered, and footprint was found by doorknob; totality of circumstances permit inference

that Appellant intended criminal purpose; female victim identified Appellant as individual who forcibly entered her home and murdered male victim; female victim was credible eyewitness; text and voicemail messages between female victim and Appellant corroborated female victim's account of events; evidence was sufficient to convict Appellant of second degree murder and related offenses).[3] The record supports the trial court's decision; therefore, we have no reason to disturb it. Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2014

---

[3] We note the trial court opinion mistakenly refers to female victim as Ms. Brooks.

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
                       :

   V.                    : **CP 51 CR 0005904 2011**

VARNADO JONES         :

**FILED**

SEP 16 2013

**OPINION**

DeFino-Nastasi, J.

Criminal Appeals Unit
First Judicial District of PA

### PROCEDURAL HISTORY

On November 8, 2012, the Defendant was found guilty after a bench trial presided over by the Honorable Rose Marie DeFino-Nastasi of: Second Degree Murder; as a felony of the first degree; Burglary, as a felony of the first degree; Criminal Trespass, as a felony of the second degree; Possession of an Instrument of Crime (PIC), as a misdemeanor of the first degree; Aggravated Assault, as a felony of the second degree; Simple Assault, as a misdemeanor of the second degree; and Recklessly Endangering Another Person (REAP), as a misdemeanor of the second degree.

He was sentenced that same date to a mandatory sentence of Life without the possibility of parole for his murder conviction; two and one-half (2½) to five (5) years' incarceration for his PIC conviction, to run concurrently; three (3) to six (6) years' incarceration for his Aggravated Assault conviction, to run consecutively.[1]

On December 10, 2012, the Defendant filed an appeal to the Superior Court of Pennsylvania *pro se*.

On April 10, 2013, the Superior Court issued an order allowing trial counsel to withdraw and directing this court to appoint substitute counsel.

CP-51-CR-0005904-2011 Comm. v. Jones, Varnado R
Opinion

7064116151

---

[1] The Court found that the convictions for Burglary, Criminal Trespass, Simple Assault, and REAP merged for sentencing purposes.

1

On April 17, 2013, this court appointed David Rudenstein, Esq., as substitute appellate counsel.

On June 25, 2013, a 1925(b) statement was filed raising the following claims:

1. The evidence was insufficient to support the Defendant's convictions;

2. The verdict was against the weight of the evidence;

3. The trial court erred in denying the Defendant's Rule 600 motion.

## FACTS

Police Officer Joseph Mason testified that on February 28, 2011, responding to a radio call of a stabbing, he went to 5643 Nelson Street in Philadelphia at 6:27 A.M. He banged on the door and heard a woman's voice saying come in. The door knob was in a locked position but he was able to push the door open. He saw what looked like a footprint on the door in the area of the door knob. The wood of the door was splintered and broken. A woman's voice coming from upstairs told him to "come here" and "help". As he came around the bottom of the staircase, he saw a woman sitting on the floor at the top of the staircase holding a male's head in her lap. She had blood on her face and a large amount of blood on her clothing. (Notes of Testimony, Trial (Waiver) Volume 1, November 5, 2012, pages 34 – 41).

Officer Mason proceeded up the stairs and saw a black male stretched out on the floor bleeding from a large chest wound. The male was barely breathing and was unresponsive. The woman, later identified as Hadiya Braddock, told Officer Mason that Varnado Ray, (hereinafter referred to as the Defendant), had stabbed the male, later identified as James Prince. She described Prince as her boyfriend. She described the Defendant as a black male, 210 pounds, bald with a grayish beard wearing black pants and shoes. She told Officer Mason that the

2

Defendant did not live in Philadelphia full time but stayed at his mother's house at 21st Street and Chelten Avenue when he was in Philadelphia. (NT, id, pages 41 – 43).

Medics arrived and transported Prince to Einstein Hospital. Officer Mason took Ms. Braddock to Einstein Hospital for treatment to a cut under her eye and a split lip. While at the hospital, Officer Mason was advised that Prince, (hereinafter referred to as the decedent), died at 7:04 A.M. (NT, id, pages 44 – 47).

After Ms. Braddock was released from the hospital, Officer Mason drove her past 6311 North 21st St., the house Ms. Braddock described as the Defendant's mother's house and where the Defendant stayed when he was in Philadelphia. Officer Mason then took her to the homicide unit for an interview. (NT, id, pages 46 – 47).

Ms. Braddock testified that the Defendant had been coming into the diner where she worked since July, 2010, two (2) times a week or sometimes every other week. She became friends with the Defendant and went out on dates with him. He would buy her clothes and she had sexual relations with him one time in September of 2010. In November and December of 2010, she stopped speaking to him because the decedent had moved in with her. The Defendant continued to text and call her. She did not answer his calls or texts. (NT, id, pages 58 – 69).

In February, 2011, Ms. Braddock was two (2) months behind on her rent and called the Defendant for help. On Friday, February 25, 2011, the Defendant came to her house and agreed to lend her money. They planned to meet on Monday morning, February 28, 2011, at the Criminal Justice Center, located at 1301 Filbert Street in Philadelphia so that she could get bench warrants lifted, and he would then give her the money for the rent. Later that day or the next day, the Defendant sent her a text message that read "could I get a little sex". She texted back, "sure". (NT, id, pages 74 – 77).

3

The Defendant sent Ms. Braddock several more text messages over that weekend that she did not respond to. On Sunday evening, however, she answered one call from the Defendant during which she told him she would meet him that Monday morning at the CJC to take care of her bench warrants. On Monday, February 28, 2011, the decedent returned to Philadelphia after being out of the city for a few days and went to Ms. Braddock's home in the early morning hours. Ms. Braddock returned home and listened to voice mail messages that the Defendant had left her on cell phone that she had given the decedent to use while he was away that were "pretty mean" and erased them. She recognized the Defendant's voice. (NT, id, pages 81 – 84).

Upon awakening on Monday morning at approximately 6:15 A.M., Ms. Braddock's phone was ringing and she could hear a banging on the door downstairs. The decedent was in the bedroom lying in bed. She went into the bathroom. She heard the front door being kicked in. The Defendant grabbed her by the hair and neck and pulled her out of the bathroom. The Defendant held a knife with a 5" blade up to her throat. The Defendant threw her up against the wall and started hitting her and cursing at her. She called out to the decedent who came into the hallway and told the Defendant to stop. The Defendant turned around and stabbed the decedent in the chest one time. The Defendant kicked her as she crawled over to the decedent and then he ran out of the house. (NT, id, pages 78 – 80, 90).

She was taken to Einstein hospital by the police officers responding to the scene. She received stitches in her lip and under her eye. While she was being transported to the homicide unit, she received a text message from the Defendant that read "status". She replied, "you killed him". The Defendant texted her back, "you killed me" and "forget my number". She was then taken to the homicide unit where she gave a statement to detectives, identified a photo of the decedent, and picked the Defendant's photo out of an array. (NT, id, page 104 – 110).

4

Detective Joseph McDermott testified that he, along with other police officers and SWAT team members, executed a search warrant on 6311 North 21st Street (the Defendant's mother's house). He found mail addressed to the Defendant and an empty knife box in a second floor front bedroom. He was unable to locate the knife that matched the picture on the empty knife box in the house. The knife was described on the box as a 4 ½ inch, lightweight, lock back, stainless steel blade with etch textured composition handle. Officer McDermott secured search warrants for the phone records of Ms. Braddock and for the phone number belonging to the Defendant. (Notes of Testimony, November 6, 2012, Volume 2, pages 117–127).

Detective Christopher Tankelewicz testified that he is the director of the technical service unit for the Philadelphia District Attorney's Office. He was presented as an expert in the field of digital forensics. He conducted an investigation at the request of homicide detectives on the cell phone interactions of Ms. Braddock's phone and the phone number attributed to the Defendant. (NT, id, pages 17–24).

The Defendant testified that on Friday, February 25, 2011, he received a call from Ms. Braddock telling him that she wanted to see him. He went to the restaurant where she worked. She told him she would call him later. She called him at 3:00 P.M., while he was at his mother's house at 6311 N. 21st Street and asked him to come to her house. He arrived at her house in thirty (30) minutes. She told him that she needed money to pay her rent. He left her house at 11:00 P.M., he returned to her house at 12:00 P.M. He left her house at approximately 9:30 A.M. the next day, Saturday. He texted her and told her to "have a nice day" and to "go out and have some fun". He did not see Ms. Braddock again until Monday morning at approximately 5:30 A.M., when he went to her house and gave her carfare and lunch money so that she could go get her bench warrants taken care of. He returned to his mother's house on 21st Street and did some

5

some chores around the house. He texted her asking her the "status" of whether she had taken care of her bench warrants. She texted him back, "you killed him". He texted her back, "you are killing me". He did this because she was not taking care of the business of the bench warrants. He then left Philadelphia for Coatesville, Pennsylvania, where he is a resident of a program for Philadelphia veterans. Later that day Ms. Braddock called him again asking him for more money. At approximately 6:00 A.M., the next morning, he received a phone call from his mother telling him that the police had been to her house and tore the door off its hinges looking for him. He then made arrangements to turn himself in. The Defendant testified that he did not know the decedent. (Notes of Testimony, Trial (Waiver), Volume 3, November 7, 2012, pages 53 – 66).

Defense counsel entered into evidence certified copies of an overnight pass form and a sign in/sign out log. The records showed that the Defendant left the program on an overnight pass on Friday, February 25, 2011 at 6:35 A.M. and returned Monday, February 28, 2011, at 8:15 A.M. (NT, id, pages 47 – 48).

Detective James Dunlap testified as an expert in cellular survey analysis and geolocation. He testified that he reviewed cell phone records from 2/20/11 to 3/2/11 where the subscriber was the Defendant with an address noted as 6311 N. 21st Street. He reviewed the Defendant's cell phone records on February 28, 2011. Based on his review, he opined that the Defendant's cell phone was in the area of 5643 Nelson Street (the crime scene) until 6:40 A.M. then at 7:08 A.M. to 8:03 A.M., the phone was in the area of 12th and Market Streets in Philadelphia until 9:05 A.M. The phone moved consistently on a line westward to the Coatesville area where it stayed for the next couple of days. (Notes of Testimony, Trial (Waiver) Volume 3, November 7, 2012, pages 4, 30 – 36).

6

## ANALYSIS

The Defendant first claims that the evidence was insufficient to support the verdict on all charges. The Defendant specifically claims that the Commonwealth did not establish the Defendant was the actual perpetrator, nor an accomplice, nor a criminal conspirator.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offenses beyond a reasonable doubt. In making this determination we must evaluate the entire trial record and consider all the evidence actually received. It is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the trier of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Additionally, the Superior Court may not reweigh the evidence and substitute our judgment for that of the fact finder. *Commonwealth v. Devine*, 750 A.2d 899, 903-04 (Pa. Super. Ct. 2000) (internal citations and quotations omitted).

7

To secure a conviction for second-degree murder, the Commonwealth must prove that the defendant committed a murder while he was engaged in the perpetration of a felony.

18 Pa.C.S. § 2502(b) provides in relevant part:

> **(b) Murder of the second degree.**--A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.
>
> **(d) Definitions.**--As used in this section the following words and phrases shall have the meanings given to them in this subsection:
>
> **"Perpetration of a felony."** The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping. 18 Pa. Cons. Stat. Ann. § 2502

In the case *sub judice*, the underlying felony of the Defendant's conviction for second-degree murder was burglary.

> A person is guilty of a burglary if he enters an occupied structure with the intent to commit a crime therein and without license or privilege to enter. 18 Pa.C.S.A. § 3502(a). The intent to commit a crime after entry may be inferred from the circumstances surrounding the incident. *Commonwealth v. Alston,* 539 Pa. 202, 651 A.2d 1092, 1094 (1994). While this intent may be inferred from actions as well as words, the actions must bear a reasonable relation to the commission of a crime. *Id.* Once one has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based upon the totality of the

8

circumstances. *Id.,* 651 A.2d at 1095. The Commonwealth is not required to allege or prove what particular crime a defendant intended to commit after his forcible entry into the private residence. *Id. Commonwealth. v. Lambert,* 2002 PA Super 82, 795 A.2d 1010, 1022 (Pa. Super. Ct. 2002)

The record reflects that the Defendant forcibly "entered" into the private occupied structure of Ms. Brooks' without license or privilege and through force. The front door was splintered and broken and a footprint found on the area of the door knob. Ms. Brooks identified that perpetrator as the Defendant. Based upon the totality of the circumstances, these actions permit the inference that the Defendant intended a criminal purpose. Thus, the evidence was sufficient to convict the Defendant of burglary and therefore, of second degree murder.

The Defendant claims that the evidence was insufficient to support the guilty verdict on the charges of Criminal Trespass, PIC, Aggravated Assault, Simple Assault and REAP because the Commonwealth did not establish that the Defendant was the actual perpetrator, an accomplice, nor a conspirator.

Ms. Braddock testified that it was the Defendant who forcibly entered her residence and murdered the decedent. Therefore, the Commonwealth established through her testimony that the Defendant was the actual perpetrator. As stated supra, it is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial. As this court stated before delivering its verdict, it found Ms. Braddock to be a credible eyewitness as to the events she observed on the day of the incident. The court also stated that the circumstantial evidence; the texts and the cell phone messages, corroborated Ms. Brooks testimony.

The Defendant next claims that the verdict is against the weight of the evidence.

9

A new trial can only be granted on a claim that the verdict was against the weight of the evidence in the extraordinary situation where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we can only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Drumheller*, 570 Pa. 117, 143, 808 A.2d 893, 908-09 (2002) (internal citations and quotations omitted).

The verdict in this case was not contrary to the weight of the evidence and does not shock one's sense of justice. Accordingly, the Defendant's challenge to the weight of the evidence is without merit.

The Defendant next claims that the trial court erred in denying the Defendant's Rule 600 motion.

See the court's ruling Notes of Testimony, Trial (Waiver) Volume 1, November 5, 2012, pages 15 – 19).

## CONCLUSION

Based on the foregoing, the judgment of sentence should be affirmed.

By the Court

_____
Rose Marie DeFino-Nastasi, J.

10